PETERS, Appellant,

v.

CITY OF JACKSON, et al., Appellees.

[Cite as *Peters v. Jackson* (1995), 100 Ohio App.3d 302.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 94 CA 732.

Decided Jan. 18, 1995.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Russell E. Carnahan,* for appellant.

*John L. Detty,* for appellees.

*Per Curiam.*

This is an appeal from a judgment entered by the Jackson County Common Pleas Court dismissing an appeal from a decision of the Director of Public Service for the city of Jackson terminating John Peters, plaintiff below and appellant herein, from his position as a volunteer firefighter.

Appellant assigns the following error:

First Assignment of Error:

"The court of common pleas erred in finding that it had no jurisdiction to hear this appeal."

Second Assignment of Error:

"The court of common pleas erred by failing to determine, as a matter of law, that the appellees violated R.C. 737.12 in terminating the appellant's employment."

Appellant served the city of Jackson as a volunteer firefighter. The record does not reveal whether appellant received pay for his services. We note, however, that volunteer firefighters sometimes receive pay for their services. Ohio Revised Code and Ohio Administrative Code sections define "volunteer firefighters" as follows: (1) people who perform firefighter services on a less than full-time basis (R.C. 9.65[C][1]); (2) nonpay or part-pay firefighters (R.C. 146.01[B][1]); (3) an employee of a private fire company or a person who performs service as a firefighter for no compensation or for an honorarium (Ohio Adm.Code 145–5–07[A][2]); and (4) a person who serves on less than a full-time basis for the performance of firefighting activities (Ohio Adm.Code 3301–63–01[S]). Volunteer firefighters sometimes receive more than pay for their services.[1]

After appellant indicated a desire to take the Jackson Assistant Fire Chief Promotional Test scheduled for July 8, 1993, the Jackson Civil Service Commission Chairman sent appellant a June 17, 1993 letter directing him to answer four questions, including the following:

"3.  If you are employed outside the Volunteer Fire Department, please state the name of your employer:

---

1.  The Ohio Revised Code permits some volunteer firefighters (1) to participate in an annuity program (R.C. 9.65); (2) to serve in the classified civil service (R.C. 124.11[C]); (3) to benefit from a volunteer firefighters' dependent's fund (R.C. 146.01[B][1] and 146.07); (4) to receive liability, accident, and death benefits (R.C. 505.23); (5) to participate in workers' compensation (R.C. 505.41); and (6) to purchase special license plates (R.C. 4503.47).

"4. Is your principal place of employment (as listed in Question # 3) within the City of Jackson, Lick Township or Franklin Township? (The place that you report, physically, for your place of employment.)

"Yes ____ No ____."

The letter noted that in order to be eligible to take the promotional test, appellant must live and work within the fire department's service area. On June 23, 1993, appellant answered the third question by handwriting "not employed as of this date" on the line, and answered the fourth question by checking "yes."

On June 25, 1993, the city of Jackson sent a letter to Hocking College in Nelsonville, Ohio, requesting verification that appellant worked for Hocking College full-time during 1992 and 1993, and had the possibility of being employed full-time during 1994. A Hocking College personnel officer responded on June 29, 1993, with the requested verification. We note Hocking College, in Athens County, is outside the fire department's service area.

On July 1, 1993, the Jackson Civil Service Commission Chairman sent appellant a letter informing him that he was not eligible to take the examination for assistant fire chief due to his employment with Hocking College. The letter stated in pertinent part as follows:

"The information which is available to the Commission indicates that you are employed at Hocking Technical College in Nelsonville, Ohio. The Commission has been informed that your employment is of a full-time nature and that your principal place of employment is outside the City of Jackson, Lick Township, or Franklin Township, the fire service area."

The letter cited the Jackson Volunteer Fire Department Personnel Handbook requiring all officers to work in the fire service area.

On July 6, 1993, the Jackson Director of Public Service sent appellant a letter informing him that a pre-disciplinary hearing would be held on July 12, 1993 concerning the following charge:

"The Charge—Lying to the Civil Service Commission in a letter of June 23, 1993, about your place of employment and whether you are employed or not. See copy of letter to Civil Service Commission dated June 23, 1993, and a copy of letter from Hocking College, dated June 29, 1993."

Appellant did not attend the July 12, 1993 hearing. Hearing Officer Samuel Shumard's July 14, 1993 report concluded that appellant had lied about his place of employment and whether he was employed.

The record transmitted on appeal[2] indicates that the following three events occurred on July 21, 1993: (1) Shumard heard additional testimony in appellant's presence and with appellant's participation; (2) Shumard declared the hearing adjourned; and (3) the Jackson Law Director wrote a letter requesting Shumard to "hold open the hearing" until the depositions of Hocking Technical College officials could be taken. On July 26, 1993, Shumard rescinded his July 21, 1993 "hearing adjourned" order and notified appellant that the hearing would be reconvened.

The transcript transmitted on appeal includes testimony given during hearings on July 21, 1993 and August 4, 1993. At the first hearing, the Jackson Civil Service Commission Chairman testified about appellant's answers on the questionnaire. Robin Poetker, a Jackson Civil Service Commission secretary, testified she requested and received verification that appellant was employed full-time at Hocking College in Nelsonville, Ohio. Appellant testified that he works only nine months per year for Hocking College, from September to June. Appellant further testified that at the time he answered the questionnaire, he was technically not employed at Hocking College, but was spending time taking care of his rental property in the fire department's service area.

At the August 4, 1993 hearing, two Hocking College officials testified that appellant works only nine months per year at Hocking College. The officials noted that although appellant is not employed during the summer months, he receives paychecks and benefits during those months. At the time appellant answered the questionnaire, his 1992–1993 contract had expired and he had not yet signed a contract for the 1993–1994 school year. When asked whether appellant was presently employed (on the August 4, 1993 date of the hearing), one Hocking College official answered:

"A. I don't know how to answer that. He's considered a full time employee."

When asked whether she considers appellant to be employed during the summer months, the other Hocking College official answered:

"A. He's employed—in actuality, no, he doesn't have a contract for the summer."

On August 26, 1993, Shumard issued a report without a recommendation. The report stated in pertinent part as follows:

---

**2.** The record transmitted on appeal does not contain the original documents leading to appellant's termination and does not contain a chronological index of those documents. We are unable to ascertain whether we have all the documents leading to appellant's termination. For purposes of this appeal, we will assume we have all the relevant documents.

"*THE CHARGE* : That Mr. Peters was guilty of lying to the Jackson Civil Service Commission in answering a questionnaire relative to taking an examination for Assistant Fire Chief. The problem dealt with the answer Mr. Peters gave to Question # 3, concerning his employment. Mr. Peters answered that as of the date of his filling out the form, he was not employed. During the course of this hearing, evidence and testimony revealed that Mr. Peters is employed on a year-to-year basis on a contract that covers approximately three (3) quarters of a year (a school year). During the summer quarter, Mr. Peters is not 'under contract' and, he states, he feels that he is actually 'not employed' during that time, (even though he continues to receive a paycheck and certain benefits during this time). Mr. Peters has enjoyed eighteen continuous years of this arrangement, and the memos and testimony of the two (2) personnel people at the school seem to indicate that Mr. Peters was considered to be 'employed' during the time in question, by the school, even though he was not under contract per se.

"*CONCLUSION* : The question as to whether or not Mr. Peters was 'employed' or not seems to rest in Mr. Peters' mind, at least, in the technicality of whether or not he was 'under contract.' I feel that this is 'nit-picking' and the answer given to the question on the application was probably designed to deceive the Jackson Civil Service Commission; however, this was neither proven nor disproved during the course of this hearing. Only Mr. Peters knows the answer to this question.

"*RECOMMENDATION* : I have no recommendation with respect to disciplinary action in this matter."

On September 1, 1993, the Jackson Director of Public Service terminated appellant from his position in the Jackson Volunteer Fire Department. The termination letter stated in pertinent part:

"Mr. Shumard's memo to me, dated August 26, 1993, is attached containing *The Charge—Conclusion* and *Recommendation.*

"I have read, verbatim, the testimony of all witnesses in this case.

"You were afforded the right to attend all sessions as well as cross-examine all witnesses.

"It is my finding, from the testimony, that you did (in fact) attempt to deceive the Civil Service Commission by the manner in which you answered their questions as submitted to all test takers.

"I consider this attempt at deceiving the Commission to be a serious offense; therefore, you are hereby terminated from the Jackson Volunteer Fire Department as of the date of this letter."

On September 29, 1993, appellant filed a notice of appeal to the Jackson County Court of Common Pleas. Appellees filed a brief on December 27, 1993, arguing that appellant was an unclassified employee without any right to continued employment as a volunteer firefighter. In his January 24, 1994 brief, appellant responded that the termination was in violation of R.C. 737.12, in violation of appellant's due process rights, and in retaliation for the exercise of appellant's First Amendment rights. Neither party questioned the jurisdiction of the common pleas court to hear the appeal.

On February 1, 1994, the common pleas court dismissed the appeal. The court wrote in pertinent part as follows:

" * * * This Appeal is taken pursuant to Ohio Revised Code Section 2506.01.

"Based upon the review of this Appeal, the transcript filed and the briefs of the parties, it is the position of this Court that this Court is without jurisdiction to hear this Appeal for the reason that the Appellant, John Peters, is in the unclassified service of the City of Jackson and is not entitled to protection accorded employees in the classified service. In addition, Appellant's reliance upon 737.12 of the Ohio Revised Code is misplaced in that the authority of the fire chief is to suspend. There is no evidence in the record of any suspension of the Appellant and that the Director of Public Service acted within his authority under 737.12. Section 737.12 as to the fire chief is effective only as to a suspension."

Appellant filed a timely notice of appeal to our court.

I

In his first assignment of error, appellant asserts the common pleas court erred in finding that it had no subject matter jurisdiction to hear the appeal. Appellant argues that R.C. 2506.01 gives the common pleas court jurisdiction to hear the appeal. R.C. 2506.01 provides in pertinent part:

"Every final order, adjudication, or decision of any officer * * * of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal officer of the political subdivision is located * * *.

" * * *

"A 'final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order,

adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."

Appellant concedes that he is an unclassified civil servant and that he is not entitled to civil service protection.[3] Appellant argues that because he has no right to appeal through the civil service statutes, the broad R.C. 2506.01 language giving aggrieved persons the right to appeal "every final order, adjudication, or decision" gives him the right to appeal the Jackson Director of Public Service's decision to terminate him.

Appellees emphasize that appellant served in the unclassified service, and thus has no right to continued employment. Appellees rely upon *State ex rel. Canfield v. Frost* (1990), 53 Ohio St.3d 13, 557 N.E.2d 1206, where the court ruled that unclassified employees are not entitled to the protection of the civil service rules. In response to appellant's argument that he may appeal pursuant to R.C. 2506.01, appellees cite *Schack v. Geneva Civ. Serv. Comm.* (1993), 86 Ohio App.3d 689, 621 N.E.2d 788, and *Prosen v. Dimora* (1992), 79 Ohio App.3d 120, 606 N.E.2d 1050, motion to certify overruled in (1992), 65 Ohio St.3d 1408, 598 N.E.2d 1161, where the Eleventh and Eighth Districts noted that because the Ohio Supreme Court, in *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, held that R.C. 2506.01 cannot be used to appeal from decisions which are not made in quasi-judicial proceedings, unclassified civil servants may not maintain appeals under R.C. 2506.01. See, also, *State ex rel. Rieke v. Hausrod* (1979), 59 Ohio St.2d 48, 49, 13 O.O.3d 35, 36, 391 N.E.2d 736, 737, where the Ohio Supreme Court limited R.C. 2506.01 to appeals from quasi-judicial proceedings.

In his reply brief, appellant argues that although he has no civil service protection, any termination of his employment must be accomplished in accordance with R.C. 737.12. Appellant further argues that because he has a right to be terminated in accordance with R.C. 737.12, he may utilize R.C. 2506.01 to appeal the decision to terminate him. R.C. 737.12 provides in pertinent part:

"The chief of police and the chief of the fire department *shall have exclusive right to suspend* any of the deputies, officers, or employees in their respective departments and under their management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable and just cause.

"If any such employee is suspended, the chief of police or the chief of the fire department, as the case may be, shall forthwith certify such fact in writing,

---

**3.** We note the parties agree that Jackson chose to place volunteer firefighters in the unclassified civil service. R.C. 124.11(C) permits municipal civil service commissions to place volunteer firefighters who are paid on a fee-for-service basis in either the classified or unclassified civil service.

together with the cause for such suspension, to *the director of public safety, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon. Such judgment, if the charge is sustained, may be either suspension, reduction in rank, or dismissal* from the department. Such judgment shall be final except as otherwise provided by law." (Emphasis added.)

Appellant distinguishes *Schack* and *Prosen, supra,* the two cases cited by appellees for the proposition that unclassified civil servants may not maintain appeals under R.C. 2506.01, by noting that neither of those cases involved firefighters or the R.C. 737.12 employment protection afforded to firefighters.

In support of his argument that R.C. 737.12 applies to volunteer firefighters as well as to nonvolunteer firefighters, appellant cites *Dougherty v. Torrence* (1982), 2 Ohio St.3d 69, 2 OBR 625, 442 N.E.2d 1295, and *Jaeger v. Wracker* (1983), 13 Ohio App.3d 341, 13 OBR 420, 469 N.E.2d 857. In *Dougherty,* the court first reviewed the various sections in the Ohio Revised Code concerning firefighters and then concluded that whenever a code section mentions firefighters without specifically excluding volunteer firefighters, the section includes volunteer firefighters. The court wrote in pertinent part as follows:

"Although some sections of the Revised Code classify fire fighters as volunteer or paid, part-time or full-time and temporary or permanent, other sections of the code, including R.C. 701.02, merely use the generic terms 'firemen' and 'members of the fire department.' Apparently, the General Assembly uses the particular classifications when it seeks to differentiate among the various categories of fire fighters and the general terms when differentiation is not desired. *The word 'firemen' would, therefore, include volunteer as well as paid fire fighters,* unless otherwise specified." (Emphasis added.) *Id.,* 2 Ohio St.3d at 71, 2 OBR at 626–627, 442 N.E.2d at 1297.

In *Jaeger* the Ninth District followed *Dougherty* and reasoned that a township volunteer firefighter may not be dismissed or removed without compliance with the statutory procedures found in R.C. 733.35 through 733.39.[4] Appellant urges

---

**4.** The *Jaeger* decision raises several issues. First, we note that although R.C. 733.35 concerns mayors and municipal corporations, in *Jaeger* the Ninth District applied the statute to a volunteer township firefighter. In *State ex rel. Flight v. Copley Twp. Bd. of Trustees* (Oct. 9, 1985), Summit App. No. 12123, unreported, 1985 WL 10887, the Ninth District again held that the removal procedures of R.C. 733.35 through 733.39 apply to terminations of volunteer township firefighters. See, also, *Barnes v. Sandy Twp. Bd. of Trustees* (June 25, 1991), Stark App. No. CA–8377, 1991 WL 122343, unreported, where the Fifth District, quoting *Jaeger,* held that a township volunteer firefighter has a protected property right and may not be deprived of that right without due process.

Second, we note that if R.C. 737.12 "provides for" appellant's termination, then R.C. 733.35 does not apply to his termination. R.C. 733.35 provides in pertinent part:

us to apply the *Jaeger* reasoning to R.C. 737.12 and hold that because R.C. 737.12 mentions firefighters without specifically excluding volunteer firefighters, the section includes volunteer firefighters. Appellant argues that R.C. 737.12 gives volunteer firefighters employment rights that are independent of any rights available to classified civil servants.

We have found several R.C. 737.12 cases which support the opposite proposition. In *Gourley v. Northwood Civ. Serv. Comm.* (Mar. 7, 1986), Wood App. No. WD–85–46, unreported, 1986 WL 3301, the court expressly held that R.C. 2506.01 permits an employee to appeal a decision made pursuant to R.C. 737.12.[5] In *Sherman v. Chillicothe Civ. Serv. Comm.* (1985), Ross App. No. 1168, unreported, 1985 WL 11166, we heard an R.C. 737.12 appeal without questioning whether the common pleas court lacked subject matter jurisdiction. In *Martin v. Bellefontaine* (1979), 64 Ohio App.2d 170, 18 O.O.3d 134, 412 N.E.2d 421, the Third District compared R.C. 737.12 and the civil service statute, R.C. 124.34, as those sections relate to the suspension and removal of firefighters in the classified municipal service. The court concluded that the two statutes do not conflict. R.C. 737.12 grants firefighters the right to appeal their suspensions to the common pleas court. R.C. 124.34 grants classified firefighters the right to appeal their suspensions to the civil service commission. The Third District in *Martin* did not question whether the common pleas court has subject matter jurisdiction to hear appeals from R.C. 737.12 suspensions and removals. We note, however, that unlike the case *sub judice*, *Gourley*, *Sherman*, and *Martin* all involved employees in the classified civil service.

We find that we must read R.C. 737.12 and 124.34 *in pari materia*. In *State v. Leichty* (1993), 68 Ohio St.3d 37, 39, 623 N.E.2d 48, 50, the court wrote in pertinent part as follows:

"The mayor of a municipal corporation shall have general supervision over each department and the officers provided for in Title VII of the Revised Code. When the mayor has reason to believe that the head of a department or such officer has been guilty, in the performance of his official duty, of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness, he shall immediately file with the legislative authority, *except when the removal of such head of department or officer is otherwise provided for*, written charges against such person, setting forth in detail a statement of such alleged guilt, and, at the same time, or as soon thereafter as possible, serve a true copy of such charges upon the person against whom they are made. * * * " (Emphasis added.)

In *Jaeger*, *Flight*, and *Barnes*, however, the Ninth District applied R.C. 733.35 without mentioning R.C. 737.12 and without asking whether it "otherwise provided for" the terminations of the firefighters.

5. In *Gourley*, the Sixth District reviewed the suspension of a police officer in the classified civil service.

"It is a fundamental rule of statutory construction that statutes relating to the same subject matter should be construed together. *Maple Hts. Teachers Assn. v. Maple Hts. Bd. of Edn.* (1983), 6 Ohio St.3d 314, 317, 6 OBR 374, 376, 453 N.E.2d 619, 621. 'In Ohio and elsewhere the generally accepted rule is that statutes relating to the same subject or matter, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent.' *State ex rel. Pratt v. Weygandt* (1956) 164 Ohio St. 463, 466, 58 O.O. 315, 316–317, 132 N.E.2d 191, 194. Consistent with this court's holdings, when rules or statutes that relate to the same subject matter are construed, 'the doctrine of *in pari materia* favors consistent, as opposed to inconsistent, construction.' *Austin v. Miami Valley Hosp.* (1984), 19 Ohio App.3d 231, 232, 19 OBR 382, 384, 483 N.E.2d 1185, 1187."

If we were to construe R.C. 124.34 and 737.12 as being inconsistent with each other, we would be violating the *in pari materia* rule of statutory construction.

In *Schack* the court wrote in pertinent part as follows:

"If appellant were an unclassified employee, then he was not entitled to the protection of the civil service rules. See *State ex rel. Canfield v. Frost* (1990), 53 Ohio St.3d 13, 557 N.E.2d 1206. Instead, he held his position at the pleasure of the appointing power. 15 Ohio Jurisprudence 3d (1979), 101, Civil Servants, Section 125.

"R.C. 2506.01 provides for an appeal to the court of common pleas from a final order of any agency of any political subdivision. In interpreting this provision, the Supreme Court has held that this provision cannot be used to appeal from decisions which are not made in quasi-judicial proceedings. *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562. Applying this standard, the Eighth Appellate District has expressly held that an unclassified employee cannot maintain an appeal under R.C. 2506.01. *Prosen v. Dimora* (1992), 79 Ohio App.3d 120, 606 N.E.2d 1050." 86 Ohio App.3d at 694, 621 N.E.2d at 791.

The *Schack* court thus held that R.C. 2506.01 cannot be used to give an unclassified employee the rights given to classified employees.

In *Prosen* the court wrote in pertinent part as follows:

" * * * An unclassified employee is not afforded the protection of the civil service regulations. See *State ex rel. Canfield v. Frost* (1990), 53 Ohio St.3d 13, 557 N.E.2d 1206.

"Appellant contends that the trial court had subject-matter jurisdiction to hear his appeal under R.C. 2506.01. We disagree. As the Ohio Supreme Court stated

in *State ex rel. Rieke v. Hausrod* (1979), 59 Ohio St.2d 48, 49, 13 O.O.3d 35, 35–36, 391 N.E.2d 736, 737:

" 'However, a limitation has been placed upon the right to appeal under R.C. 2506.01. In the first two paragraphs of the syllabus in *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150 [61 O.O.2d 394, 290 N.E.2d 562], this court held the following:

" ' "1. The review of proceedings of administrative officers and agencies, authorized by Section 4(B), Article IV of the Ohio Constitution, contemplates quasi-judicial proceedings only, and administrative actions of administrative officers and agencies not resulting from quasi-judicial proceedings are not appealable to the Court of Common Pleas under the provisions of R.C. 2506.01. (*Fortner v. Thomas*, 22 Ohio St.2d 13 [51 O.O.2d 35, 257 N.E.2d 371 (1970) ], approved and followed." ' " 79 Ohio App.3d at 125, 606 N.E.2d at 1053.

The court in *Prosen* thus held that an unclassified civil service employee should not be afforded the civil service protection granted to classified employees. R.C. 2506.01 does not give common pleas courts subject matter jurisdiction over appeals by unclassified civil service employees.

R.C. 124.34 provides in pertinent part:

"The tenure of every officer or employee in the classified service * * * shall be during good behavior * * * and no such officer or employee shall be * * * removed, except * * * for * * * dishonesty, * * * failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office. * * *

"In any case of * * * removal, the appointing authority shall furnish such employee with a copy of the order of * * * removal, which order shall state the reasons therefor. * * *

"Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review or the commission. In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.

"In cases of removal * * * for disciplinary reasons, either the appointing authority or the officer or employee may appeal from the decision of the state personnel board of review or the commission to the court of common pleas of the county in which the employee resides in accordance with the procedure provided by section 119.12."

R.C. 124.34 provides the procedure used during removals, suspensions, reductions in pay for any acts of misfeasance, malfeasance, and nonfeasance in office.

The statute provides that in the case of a removal, the appointing authority shall furnish the employee with a copy of the order of removal and within ten days following the filing of such order, the employee may file an appeal with the civil service commission. Thus, we find R.C. 124.34 explicitly covers only employees in the classified civil service. We note that R.C. 737.12, unlike R.C. 124.34, does not mention the right to a hearing, the right to notice, or the right to appeal.

When we read the two statutes *in pari materia*, we find that R.C. 737.12 does not give appellant greater rights than the rights accorded to other unclassified employees. R.C. 737.12 does not elevate appellant's status to that of a classified employee. Hence, we conclude that the trial court correctly held that it does not have subject matter jurisdiction to hear appellant's appeal.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

In his second assignment of error, appellant asserts the common pleas court erred by failing to determine, as a matter of law, that the appellees violated R.C. 737.12 when terminating appellant's employment. In light of our disposition of appellant's first assignment of error, we find this second assignment of error to be moot. See App.R. 12(A).

*Judgment affirmed.*

STEPHENSON, GREY and PETER B. ABELE, JJ., concur.